**Javan FOSTER, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

**Civ. A. No. 70–1316–J.**

United States District Court, D. Massachusetts.

April 12, 1972.

Michael A. Collora, Boston, Mass., for Javan Foster.

Joseph L. Tauro, U. S. Atty., Alan Hoffman, Asst. U. S. Atty., for the United States.

## MEMORANDUM OF DECISION

JULIAN, Chief Judge.

Petitioner, Javan Foster, is before the Court on his motion to vacate sentence under 28 U.S.C. § 2255.

Petitioner was convicted on February 18, 1970, in the United States District Court for the District of Massachusetts on two counts of a four-count indictment for violation of 26 U.S.C. §§ 4704(a) and 4705(a).[1] On the other two counts the petitioner was found not guilty. Petitioner's co-defendant, Matthew Harris, was acquitted on all four counts. The same attorney, recommended by a then United States Commissioner and retained by Foster and Harris, represented both defendants at trial.

Petitioner was sentenced by the trial judge on March 6, 1970, to a mandatory minimum term of imprisonment of five years. Execution of the sentence was stayed pending appeal.

On June 8, 1970, during the pendency of his appeal, the petitioner, then imprisoned for reasons explained later, sent a letter to the trial judge requesting a reduction in sentence. The trial judge, unable to entertain such a request until consummation of the appeal, received another letter from petitioner on September 5, 1970, again requesting a reduction in sentence and stating that petitioner's attorney had failed to help him. The petitioner's appeal having been dismissed, the trial judge treated the second letter as a motion to vacate sentence under 28 U.S.C. § 2255 based upon two grounds: (1) ineffective assistance of counsel at trial due to want of impartial and disinterested advice; (2) deprivation of right of appeal through failure of counsel to prosecute same. Petitioner

urges that he is entitled to a new trial or, in the alternative, to a renewal of his appeal from the conviction.

On December 29 and 30, 1971, this Court held an evidentiary hearing at which petitioner and his former attorney appeared and testified. Petitioner was represented by counsel appointed by this Court. The decision which follows is based upon the evidence received at the hearing, documentary and testimonial,[2] as well as the arguments of counsel and respective memoranda of law.

### INEFFECTIVE ASSISTANCE OF COUNSEL

At the outset of the hearing the petitioner requested the Court to rule that, as a matter of law, one attorney may represent two or more co-defendants only if the trial judge, prior to trial, first, advises co-defendants of the possibility that a joint defense may result in conflicts of interest and, second, makes the affirmative determination that co-defendants have intelligently elected to be represented by the same attorney and that their decision was not dictated by indigence or unawareness of the availability of court-appointed counsel.[3] Absent such advice, and an on-the-record waiver of any rights co-defendants may have with respect to separate counsel, petitioner argues that the burden shifts to the Government to show beyond a reasonable doubt that joint representation did not prejudicially impair the petitioner's Sixth Amendment right to effective as-

---

1. United States v. Matthew Harris and Javan Foster, Cr. No. 69–224–M. Both statutes were repealed by Pub.L. 91–513, Title III, § 1101(b) (3) (A), Oct. 27, 1970, 84 Stat. 1292.

   26 U.S.C. § 4704(a) read: "It shall be unlawful for any person to purchase, sell, dispense, or distribute narcotic drugs except in the original stamped package or from the original stamped package; and the absence of appropriate taxpaid stamps from narcotic drugs shall be prima facie evidence of a violation of this subsection by the person in whose possession the same may be found."

   26 U.S.C. § 4705(a) read: "It shall be unlawful for any person to sell, barter,

exchange, or give away narcotic drugs except in pursuance of a written order of the person to whom such article is sold, bartered, exchanged, or given, on a form to be issued in blank for that purpose by the Secretary or his delegate."

2. By agreement of the parties, the Court took judicial notice of the trial and appellate records of Foster's criminal case.

3. There is no evidence that the trial judge took these pre-trial precautions in the case of United States v. Harris and Foster, Cr. No. 69–224–M.

sistance of counsel. This is the rule developed by the United States Court of Appeals for the District of Columbia Circuit in a trilogy of cases—Campbell v. United States, 122 U.S.App.D.C. 143, 352 F.2d 359 (1965); Lollar v. United States, 126 U.S.App.D.C. 200, 376 F.2d 243 (1967); and Ford v. United States, 126 U.S.App.D.C. 346, 379 F.2d 123 (1967)—interpreting the decisions of the Supreme Court in Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942) and, as to the Government's burden of proof, Chapman v. United States, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). The Court deferred action on the petitioner's oral motion, instructing petitioner to present evidence on the assumption that the burden of showing prejudice remains upon him in the prosecution of his constitutional claims under 28 U.S.C. § 2255. The Court, having carefully considered petitioner's *per se* approach to the constitutional question raised by joint legal representation of co-defendants at trial, declines to adopt such a consequential rule as that obtaining in the District of Columbia Circuit. The Court nevertheless remains "peculiarly sensitive to a showing of conflict of interest, if such can be suggested." Rolon Marxuach v. United States, 398 F.2d 548, 552 (1st Cir., 1968).[4]

■ Preliminarily, it should be noted that petitioner need not delineate the precise manner in which he was prejudiced by joint representation. As the Supreme Court stated in Glasser v. United States, *supra*, at 75–76, 62 S.Ct. at 467

"[t]o determine the precise degree of prejudice sustained by Glasser as a result of the court's appointment of [the same attorney for his co-defendant] is at once difficult and unnecessary. The right to have the assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial."[5]

Mindful of the necessity that petitioner's fundamental right to effective assistance of counsel be jealously guarded, the Court has conducted a thorough review of the transcript of the trial in search of indications of any conflicting interest between co-defendants Foster and Harris. Essential to an understanding of the contentions of the parties, and of the Court's ruling, is a summary of the evidence adduced at trial pertaining to the events of July 18, 1969, out of which the petitioner's conviction grew.

At trial the Government sought to prove that Foster and co-defendant Harris engaged in the sale of heroin to an undercover agent of the Bureau of Narcotics and Dangerous Drugs, one Harvey Wheeler, on July 18, 1969. The Government's principal witness was Agent Wheeler, who testified that on that date he met Foster and Harris at 39 Chase Street, Methuen, Massachusetts, the street address of both defendants, and informed Harris that he would be interested in purchasing ten bags of heroin.[6] According to Agent Wheeler, Harris conversed with Foster, Foster departed, and "Harris then told me that the

4. *But see* United States v. Bentheim, 456 F.2d 165, at 167 (1st Cir., March 1, 1972,) citing Bottiglio v. United States, 431 F. 2d 930 (1st Cir., 1970).

5. Concededly, counsel was court-appointed in *Glasser*. In the present case, counsel was retained by co-defendants after having been recommended by a then United States Commissioner. However, "the right to effective assistance of counsel without conflict of interest is not necessarily waived because a defendant chooses to be represented by the attorney for his

co-defendant. . . . [If a conflict of interest is shown] it is immaterial whether such counsel was appointed by the court or selected by the accused in the absence of facts constituting a waiver of right." Larry Buffalo Chief v. State of South Dakota, 425 F.2d 271, 279 (8th Cir., 1970). See also Campbell v. United States, *supra*; Porter v. United States, 298 F.2d 461 (5th Cir. 1962) and cases cited therein; Craig v. United States, 217 F.2d 355 (6th Cir., 1954).

6. Transcript, at 20.

stuff was dynamite stuff, and he also said, asked me if I had a needle. I said I didn't, and he said it was too bad because I could go in his house and try it out to be sure it was dynamite stuff." [7] Foster soon returned with ten bags of heroin. Agent Wheeler told Harris that he wanted to see the heroin. Harris indicated that the heroin was in Foster's hand. Agent Wheeler extended his hand, into which Foster placed the heroin. Agent Wheeler gave the money, $100, to Foster, who counted it and said it was all there.[8] Harris told Agent Wheeler to come back again; the agent said he probably would, and then departed. On cross-examination Agent Wheeler testified that he was accompanied to 39 Chase Street by one Mel Greer (at times referred to as Merle), who arranged the sale of heroin at Agent Wheeler's request.[9]

Three other witnesses testified for the Government, all employees of the Bureau of Narcotics and Dangerous Drugs.

The defense produced two witnesses, the defendants themselves. Defendant Foster testified that on July 18, 1969, he returned home from work at noon for lunch.[10] There he encountered Harris and one Chris Rodrigues (at times referred to as Chris Cruise). Rodrigues wanted "Harris to give something to Mel [Greer]," but Harris said "he would not be home," that he "had to go to the store [which he owned and operated] at 12:30." [11] Rodrigues then asked Foster to do the favor, and Foster told him, "I would not be home during the day, but if [Greer] came after 6 o'clock I would be home and I would give it to him." [12] Rodrigues gave a package to Foster and Foster put it in the house before return-

ing to work. That night, shortly after 7 p. m., Mel Greer and another man, unknown to Foster, came to 39 Chase Street, Greer entered the house alone and asked Foster whether Rodrigues had left anything for him. Foster gave the package to Greer. Greer then, according to Foster's testimony, "went back outside, then he came back and handed me some money," saying, "Give this to Rodrigues, I owe him this." [13]

On cross-examination, Foster testified that no mention of money had been made at the noon-hour meeting of Harris, Foster, and Rodrigues, and that he did not expect Greer to hand him any money for the package.[14] Foster further testified that he knew the package contained heroin when Rodrigues gave it to him,[15] and that he gave the money received from Greer to Rodrigues, who came to 39 Chase Street the following day and requested it.

Defendant Harris testified that Chris Cruise (Rodrigues) did ask him to give something to Mel during a noon-hour conversation at 39 Chase Street, although he was uncertain of the exact date. Harris added, gratuitously, that Rodrigues made his request "in the presence of Mr. Foster." [16] Rodrigues "wanted to know if I could give this to Mel if I saw him anytime soon, and I said, no, having an idea what the package was." [17] Harris then returned to his store, where he worked until 11 p. m. that night.[18] Harris testified that he did not see Agent Wheeler at all on July 18, 1969.[19]

■ Petitioner contends that a conflict between his interest and that of Harris rendered single defense counsel unable to effectively represent both de-

7. *Id.,* at 21.

8. *Id.,* at 22.

9. Mel Greer did not testify at the trial, and the judge instructed the jury as to the possibility of drawing inferences from the failure of either side to produce Mel Greer as a witness. Transcript, at 173–175, 188–189.

10. Transcript, at 126.

11. *Id.,* at 127.

12. *Ibid.*

13. *Id.,* at 129.

14. *Id.,* at 136.

15. *Id.,* at 140.

16. *Id.,* at 152.

17. *Id.,* at 153.

18. *Ibid.*

19. *Id.,* at 162.

fendants at trial. Petitioner claims that in order to adduce evidence tending to exculpate Foster, defense counsel would have had to incriminate Harris, and vice versa; and, of course, defense counsel could not cross-examine his own witnesses and clients.

A scrupulous review of the transcript of the trial fails to disclose any such conflict as alleged by petitioner. Although petitioner certainly "suggests" a conflict,[20] he is unable to make any showing in support of his suggestion. By relieving petitioner, and the courts, of indulging in "nice calculations as to the amount of prejudice" arising from ineffective assistance of counsel, the Supreme Court in Glasser v. United States, *supra,* did not eliminate the requirement that some showing of prejudice be made. See Baker v. Wainwright, 422 F.2d 145 (5th Cir., 1970), and cases cited therein.

Specifically, petitioner claims that "Harris attempted to shift guilt on to his co-defendant and in fact successfully did so." [21] In support of his claim, petitioner first adverts to Harris' testimony that he was not at home during the evening of July 18, that he worked at his store until 11 o'clock on July 18, that he did not instruct Foster to sell heroin to Agent Wheeler, and that he was not present at any transfer of heroin between Foster and Agent Wheeler.[22] This testimony "left Mr. Foster with full responsibility for the events that evening, July 18, although it was in fact Rodrigues and Harris who originally arranged to have Foster keep the package." [23] What such an argument ignores is the fact that, although Harris' testimony conflicts diametrically with that of Agent Wheeler, it is entirely consistent with the testimony of Foster. Foster testified that Harris was not at home when the package and money changed hands.[24]

Petitioner next indicates an apparent conflict in the testimony of Harris and Foster. Harris testified that he refused to take the package from Rodrigues for delivery to Greer, "having an idea what the package was." [25] Foster, on the other hand, testified that Harris did not take the package because he would not be home, having to return to the store.[26] Whether the testimony of Harris and Foster is at variance as to the reason why Harris did not take the package for delivery to Greer is questionable. Both Harris and Foster testified that Foster entered a noon-hour conversation at 39 Chase Street with Rodrigues at some stage after its commencement.[27] Furthermore, there is no evidence that Harris gave expression to his "idea." In any event, the Court fails to appreciate the relevance of Harris' reason for not taking the package from Rodrigues to the issue of whether Foster sold heroin to Agent Wheeler. Thus, even assuming a discrepancy in the testimony of Harris and Foster on this point, it was not prejudicial to Foster's defense.

Petitioner finally speculates that, through more rigorous cross-examination of Agent Wheeler and the agent who observed the transaction of July 18, as well as of Harris, "it perhaps could have been possible to establish Harris as the organizer of the sale, with Foster's role only as agent, receiving no money for his role." [28] Such speculation hardly suffices to furnish a basis upon which to vacate petitioner's sentence and grant a new trial.

Nor does a review of the entire record reveal any indicia of conflicting interests beyond those to which petitioner makes specific, but unavailing, reference.

Accordingly, petitioner's motion to vacate sentence because of ineffective assistance of counsel at trial is denied.

---

20. See Rolon Marxuach v. United States, *supra.*

21. Petitioner's Pre-Hearing Memorandum of Law, at 11.

22. Transcript, at 153–154.

23. Petitioner's Pre-Hearing Memorandum of Law, at 12.

24. Transcript, at 130.

25. *Id.*, at 153.

26. *Id.*, at 127.

27. *Id.*, at 134, 152.

28. Petitioner's Pre-Hearing Memorandum of Law, at 16.

## DEPRIVATION OF RIGHT
## OF APPEAL

In the alternative, petitioner seeks renewal of his right of appeal from the conviction. Petitioner contends that his attorney failed to prosecute the appeal after filing a notice of appeal with the District Court. The factual background of this claim follows.

Petitioner was found guilty by a jury on February 18, 1970. Sentence was pronounced on March 6, 1970, and execution stayed pending appeal. Although the trial judge found that an appeal would not be frivolous, a review of the transcript of the disposition reveals that he neglected to inform petitioner of his right to apply for leave to appeal *in forma pauperis* if unable to pay the cost of an appeal, as required by Rule 32(a) (2) of the Federal Rules of Criminal Procedure.[28a] Notice of appeal was filed in open court on the day of disposition.[29]

By letter dated March 16, 1970,[30] counsel for the petitioner informed Foster of the need to pay the docketing fee of $25 in order to have the appeal entered. By letter dated March 26, 1970,[31] counsel again requested a check in the amount of $25 and further suggested that $500 be forwarded to cover the cost of a transcript. On March 31, 1970, petitioner paid the docketing fee, obtaining a receipt for payment,[32] and the trial record was docketed and acknowledged by the Clerk of the Court of Appeals on that date.

At the hearing, petitioner testified that he sought to borrow $500 to cover the cost of a transcript, but was unsuccessful in his efforts. Petitioner further testified that he thought the appeal would continue with or without a transcript of his trial, and that at no time did his attorney advise him of the possibility of proceeding *in forma pauperis*.[33]

By letter dated May 4, 1970,[34] petitioner's attorney advised Foster of the filing of a motion to extend time for filing a brief in the Court of Appeals,[35] enclosed a copy of that motion, and reiterated the need for $500 for a transcript. On May 7, 1970, the Court of Appeals enlarged the time within which petitioner was to file a statement of issues and designation of contents of appendix to and including June 16, 1970, and enlarged the time for filing his brief to and including June 30, 1970.[36] On May 7, 1970, the Court of Appeals also revoked petitioner's stay of execution for want of diligent prosecution of the appeal, finding that no transcript had been ordered by petitioner or his counsel. Petitioner surrendered, as ordered, on May 12, 1970.

Petitioner's attorney testified that in the course of a telephone conversation initiated by petitioner while in the custody of the United States Marshal, on or about May 12, 1970, he informed petitioner that he was no longer acting as his attorney. He further testified that his last act as petitioner's counsel was the filing of the aforementioned motion for an extension of time, granted by the Court of Appeals on May 7, 1970. Petitioner testified that after imprisonment he wrote a letter to his attorney requesting assistance, but received no reply.

By letter of June 8, 1970, addressed to the trial judge, petitioner requested that

---

28a. The necessity of strict compliance with Rule 32(a) (2) is italicized in United States v. Benthei[m], 434 F.2d 1031 (1st Cir., 1970).

29. Respondent's Exh. E.

30. Respondent's Exh. A.

31. Respondent's Exh. A.

32. Respondent's Exh. G.

33. The Court heard evidence on petitioner's financial condition at the time of his conviction. Petitioner's net weekly salary was $100; he had no other assets; his rent was $20 per week; and his weekly bills, including food, furniture, pots and pans, amounted to $50–$55. His wife was not working. After revocation of petitioner's stay of execution and incarceration, *infra*, and while his appeal was still viable, petitioner had no money.

34. Respondent's Exh. C.

35. Respondent's Exh. H.

36. Respondent's Exh. I.

his sentence be reduced. The judge responded by letter to petitioner and his counsel, stating that the District Court was without jurisdiction to act in the case while the appeal was pending.

On July 1, 1970, the Government moved to dismiss the appeal for lack of prosecution. No opposition was filed. On July 8, 1970, the Court of Appeals granted the Government's motion.[37] A copy of the order dismissing his appeal was sent by registered mail to petitioner and respective counsel.

By letter dated July 14, 1970, petitioner's attorney requested the Clerk of the Court of Appeals to withdraw his appearance in the appeal of Javan Foster.[38] By letter dated July 15, 1970,[39] the Clerk informed petitioner's attorney that his requested withdrawal failed to comply with Local Rule 12(b) which states that "No attorney who has entered an appearance in this court may withdraw without the consent of the court."[40] The attorney was advised to file a motion setting forth the reason for his withdrawal if he desired that his appearance be withdrawn. There is no evidence that petitioner's attorney did so.

On September 5, 1970, the trial judge received another letter from petitioner, again requesting a reduction in sentence and stating that he had written "to my lawyer or at least he was my lawyer, but haven't recieved [sic] an answer. That was six weeks ago. I presume he has dropped me. Their [sic] is no other way but to try myself."

Petitioner's primary contention is that his counsel effectively abandoned the appeal during its pendency before the Court of Appeals without securing the required consent of that court to his withdrawal from the case.[41] Petitioner also contends that his ignorance of the right to apply for leave to prosecute the appeal *in forma pauperis* frustrated his right of appeal. The second contention, however, is said to raise a "subsidiary issue" which would be mooted by an affirmative finding that petitioner was left without the assistance of counsel during the pendency of his appeal. Petitioner's Post-Hearing Memorandum of Law, at 7.

The Government, conceding the fundamental nature of the appeal rights which Fed.R.Crim.P. 32(a) (2) is intended to ensure,[42] addresses its argument only to the second contention, citing Johnson v. Norton, 435 F.2d 842 (1st Cir., 1970), as the controlling case.[43] In *Johnson*, the Court of Appeals considered the consequences of a sentencing judge's failure to advise a convicted defendant of his rights as required by Rule 32(a) (2). In that case the court found that the trial judge's failure to inform Johnson of his right of appeal and, if indigent, his right to court-appointed counsel "could not have injured petitioner, for retained counsel duly entered an appeal in this court." Instead, the court continued,

"[p]etitioner's complaint arises from the fact that counsel then withdrew, after the appeal was perfected and this court had assumed jurisdiction. Withdrawal should not have been permitted until new counsel had appeared or been court appointed, or defendant had affirmatively waived counsel. Leaving petitioner without counsel was contrary to our present positive rule. Local Rule 12(b). In fact subsequent counsel never did appear and the appeal was eventually dismissed for lack of prosecution." 435 F.2d at 843.

37. Respondent's Exh. J.

38. Petitioner's Exh. 2.

39. Respondent's Exh. K.

40. See Johnson v. Norton, 435 F.2d 842 (1st Cir., 1970).

41. Local Rule 12(b).

42. See Coppedge v. United States, 369 U.S. 438, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962) ; Rodriguez v. United States, 395 U.S. 327, 89 S.Ct. 1715, 23 L.Ed.2d 340 (1969).

43. The Government, in comparing the present facts with those in *Johnson*, concedes that "[h]ere, retained counsel withdrew from the case de facto without seeking permission from the court to do so. In both instances, defendant was left without counsel on appeal." Government's Memorandum in Opposition to Petitioner's Motion to Vacate Sentence, at 3.

The District Court denied post-conviction relief, finding that petitioner failed to show that the dismissal of his appeal was due to lack of notice of his rights. The Court of Appeals reversed, holding that "[i]n view of the district court's original failure to inform petitioner that he was entitled, if impoverished as he now claims, to have counsel appointed for him, and our compounding the error instead of curing it, the burden was not on petitioner, but upon the government. We see no basis for finding it met." *Ibid.*

The Government contends that, in the present case, it has sustained its burden of showing that dismissal of petitioner's appeal was not due to lack of notice of his appeal rights. The petitioner, according to the Government, has failed to sustain his burden of showing that he was in fact indigent during the appeal period, and therefore was harmed by the trial judge's failure to comply with Rule 32(a) (2).

■ The Court finds it unnecessary to pass upon either the petitioner's post-conviction financial condition or the sufficiency of the Government's showing on the issue of causation. The Court finds that petitioner's counsel did abandon the appeal on or about May 12, 1970, leaving the petitioner without the assistance of counsel on appeal, as a direct result of which petitioner's appeal was dismissed for want of diligent prosecution on July 8, 1970, by the Court of Appeals. The Court further finds that the petitioner did not affirmatively waive counsel at any time during the course of his appeal. What the Government characterizes as the attorney's "de facto" withdrawal from the case during the pendency of the

appeal not only violated Local Rule 12(b) of the Court of Appeals,[44] but breached the attorney's duty to faithfully represent, and actively advocate the interests of, his client. See Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967); Ellis v. United States, 356 U.S. 674, 78 S.Ct. 974, 2 L.Ed.2d 1060 (1958). This duty is no less owed by retained counsel to a client of financial means than by court-appointed counsel to a client of demonstrated indigency.

Accordingly, the Court recommends [45] that the Court of Appeals vacate its order of July 8, 1970, dismissing the appeal, and that petitioner's right of appeal be reinstated.

---

44. Cf. Local Rule 7(c) [d] of the District Court, which provides:

"*Withdrawal of appearance.* An attorney may withdraw from a case by serving notice of his withdrawal on his client and all other parties and filing the notice, provided that (1) such notice is accompanied by notice of the appearance of other counsel, (2) there are no motions pending before the court, and (3) no trial date has been set. Unless these conditions are met, an attorney may withdraw from a case only by leave of court."

45. The Court is dubious of its authority to issue an order compelling reinstatement of an appeal which has been dismissed by the Court of Appeals. This is not a case, like United States v. Bentheim, *supra*, in which no notice of appeal was filed within the ten-day period prescribed by Fed.R.App.P. 4.