**UNITED STATES of America,
Appellee,**

v.

**Javan FOSTER, Defendant-Appellant.**

**Javan FOSTER, Defendant-Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**Nos. 7579, 72–1137.**

United States Court of Appeals,
First Circuit.

Argued Sept. 13, 1972.

Decided Nov. 14, 1972.

**2**

Michael A. Collora, Boston, Mass., by appointment of the Court, with whom

Herrick, Smith, Donald, Farley & Ketchum, Boston, Mass. was on brief, for appellant.

Alan R. Hoffman, Asst. U. S. Atty., with whom Joseph L. Tauro, U. S. Atty., was on brief, for appellee.

Before COFFIN, Chief Judge, McENTEE and CAMPBELL, Circuit Judges.

McENTEE, Circuit Judge.

Appellant, Javan Foster, was tried and convicted for selling heroin in violation of 26 U.S.C. §§ 4704(a) and 4705(a).[1] His direct appeal, which was dismissed for lack of prosecution and then reinstated, and his appeal from the denial of his motion to vacate sentence, D.C., 340 F.Supp. 1311, were consolidated for argument. We affirm both judgments below. In doing so, however, we announce a new rule for the district courts in criminal cases where one attorney appears for two or more co-defendants.

Appellant Foster and Matthew Harris were tried together on a four count indictment alleging illegal transactions in heroin. The indictment arose from two separate incidents, one occurring on July 7, 1969, and the other on July 18 of that year. Foster alone was convicted for the July 18 sale, while both defendants were acquitted of charges based on the earlier incident. At trial, Foster and Harris were represented by the same attorney, whom they had retained shortly after their arrest.

An understanding of the issues raised by this appeal requires a brief recapitulation of the testimony presented at trial. The principal government witness, Agent Wheeler, testified that on the dates in question he had approached Harris and offered to purchase heroin. On both occasions, according to Wheeler, Harris spoke briefly with Foster whereupon the latter produced several glassine bags containing the drug, which he handed to Wheeler in exchange for money. The

---

1. Both statutes were repealed by Pub.L. 91–513, § 1101(b)(3)(A) October 27, 1970, 84 Stat. 1292, effective date of re-peal being May 1, 1971, Pub.L. 91–513, § 1105(a).

defendants, however, denied selling heroin to Wheeler at any time. As to the July 18 incident, Foster admitted delivering some heroin to Mel Greer, a government informer, but testified that he had done so solely as a favor to one Chris Rodrigues and that he had not retained any of the proceeds of this sale. Harris' testimony corroborated Foster's version of this incident.

Appellant's motion to vacate sentence was based on the theory that, due to conflicting interests between himself and Harris, he was denied his sixth amendment right to effective assistance of counsel. We shall turn to that question after a consideration of the issues raised on direct appeal.

I

Appellant asks us to notice plain error under Fed.R.Crim.P. 52(b) in the trial court's instructions to the jury on two affirmative defenses. He appears to concede the doubtful applicability of that rule to the present case by suggesting that, because a question of ineffective representation by counsel has been raised, we should relax "the rigorous standards which must be met before we can notice 'plain error'." McMillen v. United States, 386 F.2d 29, 35 (1st Cir. 1967), cert. denied, 390 U.S. 1031, 88 S.Ct. 1424, 20 L.Ed.2d 288 (1968). For reasons which will appear below, we do not find this suggestion persuasive. Moreover, it is not relevant to this case, since the court did not err to appellant's prejudice.

■■ Appellant first contends that he was entitled to go to the jury on a buyer's agent defense, see United States v. Barcella, 432 F.2d 570 (1st Cir. 1970), and that the court's instruction in this regard was fatally defective because it failed to mention Greer, to whom Foster testified he gave the heroin. We need not consider whether the instruction was defective, whether the defendant was prejudiced by it or indeed whether he is foreclosed from attacking the instruction which was virtually identical to the one submitted by his attorney, United States v. Thurman, 135 U.S.App.D.C. 184, 417 F.2d 752 (1969), cert. denied, 397 U.S. 1026, 90 S.Ct. 1269, 25 L.Ed.2d 535 (1970), since nothing in the record justifies a buyer's agent instruction. According to Foster's own testimony, he had not been asked to handle the package of drugs by the buyer Greer, but rather by the supplier Rodrigues. While Foster may have been partially motivated by a desire to accommodate Greer, a man with whom he was slightly acquainted, a buyer's agent defense is not available merely because there is evidence that the intermediary knew the buyer, or did not share in the proceeds of the sale. See United States v. MacDonald, 455 F.2d 1259, 1261–1262 (1st Cir.), cert. denied, 406 U.S. 962 (1972); United States v. Barcella, *supra*.

■ Secondly, appellant contends that he was entitled to an instruction on entrapment, and that the court's failure to give such an instruction was plain error despite an apparent waiver by defense counsel. We again need not consider whether this was error notwithstanding the waiver since there was no evidence justifying such an instruction. In Kadis v. United States, 373 F.2d 370 (1st Cir. 1967), we held that a defendant must produce some evidence of his own unreadiness to commit a criminal offense before the prosecution incurs a burden of disproving entrapment. The defendant did not present any evidence of unreadiness, within the meaning of *Kadis*.

■ Finally, we find no merit in Foster's contention that there was insufficient evidence to support his conviction.

II

■ We now come to appellant's contention that he was deprived of his constitutional right to effective assistance of counsel because of a conflict of interest with his codefendant Harris. Both common sense and authority, see, e. g., Glasser v. United States, 315 U.S.

60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), instruct us to scrutinize the record with great care when such an allegation is made, but it is necessary to state at the outset what we are looking for. Petitioner on this § 2255 motion had the burden of proving by a preponderance of the evidence that he was denied effective assistance of counsel because of a conflict between his interests and those of his codefendant.[2] This court is "peculiarly sensitive to a showing of conflict of interest, if such can be suggested," Marxuach v. United States, 398 F.2d 548, 552 (1st Cir.), cert. denied, 393 U.S. 982, 89 S.Ct. 454, 21 L.Ed.2d 443 (1968), in the sense that the accused need not delineate the precise manner in which he was prejudiced. See Glasser v. United States, *supra*, 315 U.S. at 75–76, 62 S.Ct. 457. Ordinarily, prejudice would be assumed from the existence of a conflict, but a conflict will not be inferred from the fact of joint representation. In *Glasser*, the Court was careful to point out the particular testimony which made it appear that one client's interest conflicted with the other's. The record in the present case, however, does not indicate any divergence between the interests of Foster and Harris. The testimony of the two defendants was mutually exculpatory and consistent in virtually every respect.[3] The testimony of Agent Wheeler on the other hand flatly contradicted the defendants' story and strongly tended to incriminate both. Under these circumstances, separate counsel would have been ill-advised to attempt to impeach the other defendant's credibility. While Foster now argues that it would have been to his advantage to inculpate Harris with respect to the July 18 sale, such a strategy would have damaged the credibility of a witness whose testimony was strongly corroborative of his own.[4] Of course, Foster might have tried a very different line of defense under the guidance of separate counsel, but this is merely to say that one lawyer may try a case quite differently from another. The possibility here that another approach might have been used, with better results for the defendant, exists in every case and is very far indeed from making out a deprivation of constitutional right. See Duran v. United States, 413 F.2d 596, 599–600 (9th Cir.), cert. denied, 396 U.S. 917, 90 S.Ct. 239, 24 L.Ed.2d 195 (1969).

Foster also points to defense counsel's failure to call certain witnesses and request various instructions as indicative of the inadequate representation which he received. There is no evidence in the record that these omissions resulted from any conflict of interest between Foster and his codefendant.

### III

Although we hold that the appellant was not adversely affected in this particular case, we are acutely aware of the dangers to criminal defendants inherent in joint representation. We are also mindful of the difficulties faced by both attorneys and judges in attempting an after-the-fact reconstruction of the prejudice which may have been incurred from such a sharing of counsel. We therefore think it an appropriate exercise of our supervisory powers to promulgate a rule to govern the district courts in criminal prosecutions where one attorney speaks for two or more defendants. Under those circumstances, where trial commences after the publica-

2. We recognize no distinction between retained and appointed counsel in this regard. See Larry Buffalo Chief v. South Dakota, 425 F.2d 271, 279 (8th Cir. 1970).

3. While Harris did indeed give testimony placing Foster in the company of Rodrigues on July 18, Foster himself testified that he met Rodrigues in Harris'

presence and subsequently accepted a package for delivery to Greer. As for the contention that Harris placed Foster at the scene of the July 7 incident, it is simply without foundation in the record.

4. For example, Harris' testimony supported Foster's claim that he was not present at the July 7 incident.

tion date of this opinion, it shall be the duty of the trial court, as early in the litigation as practicable, to comment on some of the risks confronted where defendants are jointly represented to insure that defendants are aware of such risks, and to inquire diligently whether they have discussed the risks with their attorney, and whether they understand that they may retain separate counsel, or if qualified, may have such counsel appointed by the court and paid for by the government. For the time being, at least, we leave to the discretion of the trial court the exact time and form of the inquiry. There may be unusual circumstances where, to avoid the possibility of prejudicial disclosures to the prosecution, the court may exercise its discretion to pursue the inquiry with defendants and their counsel on the record but in chambers.

If the court has carried out this duty of inquiry, then to the extent a defendant later attempts to attack his conviction on grounds of conflict of interest arising from joint representation he will bear a heavy burden indeed of persuading us that he was, for that reason, deprived of a fair trial.

When a satisfactory inquiry does not appear on the record, the burden of persuasion will shift to the government. If the case comes before us on direct appeal, the government will be required to demonstrate from the record that prejudice to the defendant was improbable. If the issue arises in the context of a § 2255 motion, the government will bear the burden of establishing the unlikelihood of prejudice by a preponderance of the evidence. We are unwilling, at this time, to adopt a rule of automatic reversal and therefore decline to follow the approach of the Court of Appeals for the District of Columbia, *see* Ford v. United States, 126 U.S.App.D.C. 346, 379 F.2d 123 (1967); Lollar v. United States, 376 F.2d 243, 126 U.S.App.D.C. 200 (1967), which, in our view, accomplishes an essentially similar result.

Affirmed.