**David P. La FLEUR**

v.

**Frank A. HALL et al.**
**Misc. Civ. A.**

**No. 73–125.**

United States District Court,
D. Massachusetts.

Oct. 16, 1974.

Mass. Defenders Committee Daniel F. Toomey, Boston, Mass., for petitioner.

Barbara A. H. Smith, Patricia M. Dinneen, Asst. Attys. Gen., Boston, Mass., for Hall et al.

## OPINION

TAURO, District Judge.

Before the court is a petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 in which petitioner claims violations of his Sixth and Fourteenth Amendment rights to effective assistance of counsel.

Petitioner and his co-defendant were indicted for kidnapping. Petitioner was also indicted for rape. The Massachusetts Defenders Committee (MDC) was appointed to represent the petitioner and his co-defendant, both of whom were indigent. In April 1971, an MDC attorney was assigned the case. After three continuances, a trial date was set for September 22, 1971.

Approximately ten days before trial, the case was re-assigned to another MDC attorney. Immediately prior to the commencement of the trial, this MDC counsel informed the trial judge that he perceived a potential conflict of interest arising out of his representation of both defendants; that he had discovered the potential conflict the night before trial; and that he had need of a continuance[1] to explore more fully the conflict with a view to requesting appropriate action by the court. In addition to seeking a continuance, he formally requested that separate counsel be appointed to represent the petitioner because "it is my opinion now there is a very strong likelihood there could be a conflict. . . . I personally feel it could ultimately be serious." Trial Transcript (TR) 13–14.

The court clinic psychiatrist and the court clinic psychiatric social worker examined the petitioner at the judge's request during a recess to determine petitioner's fitness to stand trial. Their conclusion was that the petitioner, although fit to stand trial, was without confidence in the appointed attorney he shared with his co-defendant, was unable to "relate" to the appointed attorney and would be able to cooperate more effectively in his defense if another counsel were provided.

The petitioner addressed the judge with a personal statement of "no faith" in appointed counsel, a condemnation of appointed counsel's alleged inactivity prior to trial, and a request that separate counsel be appointed. The petitioner further expressed a desire to hire a particular private counsel who had represented him in the past. The trial judge determined by telephone inquiry that the named private counsel would refuse employment by the petitioner and did not wish to be appointed by the court.

The judge requested MDC counsel to "get somebody from your office to sit in." Counsel replied that "if there is a conflict it is the policy of our office not to have another member of our office brought in on the case." (TR 21). The judge made no further attempts to provide separate counsel, and stated: "I will take my chances with either one of the defendants being prejudiced." (TR 21).

Afer an unrecorded lobby conference in which the judge interrogated the defense attorney as to the nature of the possible conflict, he denied the request for a continuance and the request for appointment of separate counsel stating: "It does not strike me as being a conflict of sufficient dimension or weight to require the appointment of separate counsel." (TR 38). The judge made no findings in support of his conclusion

---

[1]. The trial judge's denial of the request for a continuance was raised on appeal and was originally pressed in this petition. Counsel has since dropped this claim, conceding that the matter of a continuance is within the discretion of the trial judge and that discretion was not abused. It appears from the transcript that a major factor in refusing the request was the hardship it would place on the victim who had flown in from New York to testify and who had made three previous court appearances in this case. The denial of the request for a continuance is no longer an issue in this case.

nor did he indicate, on the record, the nature of the alleged conflict of interest.[2]

At trial, the Commonwealth's case largely consisted of the testimony of the victim, the physician who examined her with respect to her allegation of intercourse, and the police officers who apprehended the petitioner and his co-defendant. The defense rested without presenting any evidence.

Petitioner was convicted by a jury on September 24, 1971, on the rape indictment. Both defendants were acquitted by the jury on the kidnapping indictment. The petitioner was sentenced on September 24, 1971, to serve a term of not less than four nor more than seven years at the Massachusetts Correctional Institution at Walpole, Massachusetts.

Petitioner appealed his conviction to the Massachusetts Appeals Court and claimed, *inter alia,* that his state and federal constitutional rights to effective assistance of counsel were violated by the trial judge's refusal to appoint separate counsel. On May 25, 1973, the Massachusetts Appeals Court affirmed the conviction. Commonwealth v. LaFleur, 1973 Mass.App.Ct.Adv.Sh. 377, 296 N.E.2d 517. An Application for Further Appellate Review was denied by the Supreme Judicial Court on June 26, 1973. On December 21, 1973, petitioner was paroled to the custody and supervision of the respondent. The precise issue in question in these proceedings was presented to the state courts in those prior proceedings. Accordingly, this court finds that petitioner has exhausted his available state remedies as required by 28 U.S.C. § 2254.

For over three decades, courts have viewed Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), as the litmus against which all questions as to the constitutional propriety of joint representation must be tested. In that case, the Supreme Court established that "the 'Assistance of Counsel' guaranteed by the Sixth Amendment contemplates that such assistance be untrammeled and unimpaired by a court order requiring that one lawyer shall simultaneously represent conflicting interests." *Id.* at 70, 62 S.Ct. at 465.

■ In United States v. Foster, 469 F.2d 1 (1st Cir. 1972), the Court of Appeals expressed its understanding of the *Glasser* holding with respect to the matter of dual representation.[3]

2. On representation of counsel that the nature of the dialogue was irrelevant, this court did not hold an evidentiary hearing to determine exactly what was said in this unrecorded lobby conference.

At a hearing in this court on September 19, 1974, the court made further inquiry into this matter:

COURT: I still haven't any idea what was said to Judge McLaughlin, and I am just asking you whether you think that is of significance.

COUNSEL: Your Honor, the petitioner's position in this case is that precisely what was represented to Judge McLaughlin and precisely what he found is not of importance to this Court. The mere fact that he found the fact of conflict is sufficient for this court to give relief. Hearing Transcript at pages 3–4.

3. The court also used this occasion to issue supervisory rules for the guidance of district court judges within the circuit. These rules are not binding on the state courts.

Under those circumstances, where trial commences after the publication date of this opinion, it shall be the duty of the trial court, as early in the litigation as practicable, to comment on some of the risks confronted where defendants are jointly represented to insure that defendants are aware of such risks, and to inquire diligently whether they have discussed the risks with their attorney, and whether they understand that they may retain separate counsel, or if qualified, may have such counsel appointed by the court and paid for by the government. For the time being, at least, we leave to the discretion of the trial court the exact time and form of the inquiry. There may be unusual circumstances where, to avoid the possibility of prejudicial disclosures to the prosecution, the court may exercise its discretion to pursue the inquiry with defendants and their counsel on the record but in chambers.

If the court has carried out this duty of inquiry, then to the extent a defendant later attempts to attack his conviction on grounds of conflict of interest arising from joint representation he will bear a heavy burden indeed of persuading us that he was, for that reason, deprived of a fair trial.

When a satisfactory inquiry does not appear on the record, the burden of persuasion

This court is "peculiarly sensitive to a showing of conflict of interest, if such can be suggested," . . . in the sense that the accused need not delineate the precise manner in which he was prejudiced. . . . Ordinarily, prejudice would be assumed from the existence of a conflict, but a conflict will not be inferred from the fact of joint representation.

469 F.2d at 4.

The threshold issue for determination, therefore, is whether in this case the record indicates a conflict, or merely a "fact of joint representation."

In asserting the existence of a conflict, the petitioner relies solely [4] on the following italicized comments of the trial judge.

I denied your request for a continuance and denied your request to appoint separate counsel and let the record indicate that in the open court you indicated a conflict you thought was serious. And I interrogated in the lobby, without prejudice, as to what the nature of the conflict was. You disclosed it to me. *It does not strike me as being a conflict of sufficient dimension or weight to require the appointment of separate counsel.* (TR 38).

Petitioner's theory is that the italicized statement by the judge constitutes a finding of *some* conflict and that faced with a finding of conflict, he had no alternative but to appoint separate counsel. The Massachusetts Appeals Court, focusing on this very issue, interpreted the quoted language as being a finding of no conflict.

We interpret the trial judge's statement ("It does not strike me as being a conflict of sufficient dimension or weight to require the appointment of separate counsel.") to reflect precisely the same thought as that stated in the *Smith, Bernier* and *Lugo* cases. Commonwealth v. LaFleur, 1973 Mass. App.Ct.Adv.Sh. 377, 381, 296 N.E.2d 517, 520.

The cases cited by the Appeals Court, Commonwealth v. Smith, 1973 Mass.Adv. Sh. 63, 291 N.E.2d 607; Commonwealth v. Bernier, 359 Mass. 13, 267 N.E.2d 636 (1971); Lugo v. United States, 350 F.2d 858 (9th Cir. 1965), all contained findings of no conflict.

This means that the pivotal language relied upon by petitioner has already been interpreted by the Commonwealth's highest courts in a manner contrary to his position. The meaning of such language is a matter of state and not federal law. The Appeals Court has rendered its interpretation of the subject language and this court is bound by that interpretation. Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).[5]

That a trial judge's extemporaneous finding of no conflict might have been

---

will shift to the government. If the case comes before us on direct appeal, the government will be required to demonstrate from the record that prejudice to the defendant was improbable. If the issue arises in the context of a § 2255 motion, the government will bear the burden of establishing the unlikelihood of prejudice by a preponderance of the evidence. We are unwilling, at this time, to adopt a rule of automatic reversal and therefore decline to follow the approach of the Court of Appeals for the District of Columbia, *see* Ford v. United States, 126 U.S.App.D.C. 346, 379 F.2d 123 (1967); Lollar v. United States, 126 U.S. App.D.C. 200, 376 F.2d 243 (1967), which,

in our view, accomplishes an essentially similar result.
469 F.2d at 4-5.

4. See transcript of hearing before this court held on September 19, 1974, at pages 13-14.

5. See Wilbur v. Mullaney, 496 F.2d 1303, 1305 (1st Cir. 1974), petition for cert. filed, 43 U.S.L.W. 3174 (U.S. July 25, 1974). *See generally* Note, Due Process and Supremacy as Foundations for the Adequacy Rule: The Remains of Federalism after Wilbur v. Mullaney, 26 Maine L.Rev. 37 (1974). This *Note* underscores the necessity for federal courts, in entertaining habeas corpus petitions, to remain vigilant against unwarranted intrusions into matters of state law.

phrased differently or with more precision had he left the bench and written it out is not a matter of constitutional dimension.

■ This court is bound by the Appeals Court construction of the questioned language as representing a finding of no conflict. Petitioner has not directed this court's attention to any other part of the record that would warrant a finding of conflict and this court's own reading of the transcript has failed to disclose one.

■ It is apparent from the record that both petitioner and his co-defendant defended against all counts on the bases of voluntary entry and consent. To this extent at least, there clearly was consistency as opposed to conflict in their defenses. The mere fact that only the petitioner was charged with rape does not constitute a basis for a finding of conflict. Moreover, the decision not to have either defendant testify was a matter of trial tactics and not conflict. A decision to testify or not would have been presented to each defendant whether represented by the same or separate counsel. There are many possible reasons for exercising a particular choice. The possibility that the fear of adverse inferences to one defendant who may choose not to testify might have been a basis for the decision is not enough to constitute a conflict. As was pointed out by the Appeals Court:

> While . . . it may not even be necessary to show prejudice where a conflict of interest appears in the record . . . we do not understand the cases to hold that a mere possibility of a conflict . . . requires appointment of separate counsel.

1973 Mass.App.Ct.Adv.Sh. 377, 380, 296 N.E.2d 517, 520 (citation omitted).

■ To find a conflict on the basis of this record would be to infer a conflict from the mere fact of joint representation. This we cannot do. United States v. Foster, 469 F.2d at 4.

Accordingly, the Petition for a Writ of Habeas Corpus is hereby denied.

So ordered.

