**John DOHERTY, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

**Civil Action No. 96–11112–WGY.**

United States District Court, D. Massachusetts.

Nov. 20, 1996.

Alan D. Rose, Rose & Associates, Boston, MA, for John Doherty.

## MEMORANDUM AND ORDER

YOUNG, District Judge.

John Doherty ("Doherty") has petitioned for *habeas corpus* relief pursuant to 28 U.S.C. § 2255. Doherty asserts that his conviction before this Court was constitutionally defective because he was deprived effective assistance of counsel. Specifically, Doherty claims that his trial counsel "labored under an impermissible conflict of interest" which led him to abandon critical lines of cross-examination and which permitted the government to impugn the credibility of Doherty's counsel in front of the jury.

## I. *BACKGROUND*

Doherty was convicted on June 16, 1995 of racketeering under 18 U.S.C. § 1962(c), racketeering conspiracy under 18 U.S.C. § 1962(d), aiding and abetting attempted murder under 18 U.S.C. §§ 1959(a)(3) and (2), and conspiracy to distribute cocaine under 21 U.S.C. § 846. These offenses stemmed from Doherty's involvement in an organized racketeering and drug distribution enterprise (the "enterprise") in Charlestown, Massachusetts. The Superseding Indictment

charged Doherty, along with John Houlihan, Michael Fitzgerald, and nine others, with a variety of criminal conduct arising out of this enterprise.

Doherty hired attorney Charles Clifford ("Clifford") of Charlestown, Massachusetts to represent him in this matter. Clifford, a local Charlestown attorney, had previously represented an individual by the name of Michael Nelson ("Nelson"), who turned out to be another member of the enterprise.[1] Nelson was scheduled to appear as a government witness against Doherty. In addition, Clifford represented Joyce Driscoll ("Driscoll"), who was charged with obstructing justice before the same grand jury that returned the indictment against Doherty.

The government filed a motion to disqualify Clifford from simultaneously representing both Doherty and Driscoll. The government's motion also sought to disqualify Clifford from representing Doherty on the ground that Clifford had previously represented Nelson. The government stated in its motion that Nelson would not waive the attorney-client privilege as to matters discussed with Clifford.[2] Clifford opposed the motion to disqualify him. Attached to the opposition was an affidavit signed by Doherty stating that he understood the conflict of interest facing Clifford and that he nonetheless "waive[d] any claim or appeal which might arise due to the potential conflict of interest." Affidavit of John Doherty, Jul. 12, 1994, Crim. No. 93–10291–WGY (Docket # 161).

This Court conducted a hearing on the motion to disqualify attorney Clifford from representing Doherty. During the hearing, this Court informed Doherty of the conflict of interest confronting Clifford. In addressing Doherty, this Court stated the following:

> The government, it's clear that the government now is going to be calling, or appar-

---

1.  Clifford represented Nelson in 1988 on a stolen property charge, in 1993 on the charge of unlawful possession of a firearm, cocaine and mace, and in 1993 on the charges of theft of an automobile and possession of burglary tools.

2.  The government takes too much on itself here. The attorney-client privilege is personal to Nel-

son, *Catino v. Travelers Ins. Co.*, 136 F.R.D. 534, 539 (D.Mass.1991), and the government does not represent him (though the defense in this case and the related case of *United States v. Houlihan*, 887 F.Supp. 352 (D.Mass.1995) strove mightily to demonstrate that Nelson had been in the government's pocket throughout). *See infra* at 114.

ently in Mr. Doherty's case, a couple of people who in the past Mr. Clifford represented. And those folks, at least while Mr. Clifford represented them, he owed them the same as he now owes you. That is a duty of 100 percent faithful fidelity to do the very best he could for those clients when he represented them.

And part of that relationship, under our law means that those clients, just as you can now, can feel free to confide in him those things that he needs to know to give them back when he was representing them, adequate representation, and you can feel free to confide in him those things that he needs to know to give you adequate representation. . . .

Well now, these two former clients, they at least say, or the government fellow tells me this, that they've told Mr. Clifford things and he can't use what he knows from them, just because they told the government now, the same things because he only knows it because they told him in the privacy of representation. . . .

And that means that if he does know things, and the only way he knows them, the only way he could find them out or discover them, is from what these two former clients told them or some witness before the grand jury, what he told them. He cannot use those things on your behalf. *To that extent, he's a lawyer with one hand tied behind his back. Because when he gets up to examine these witnesses, he can't use what he knows, he can't use anything he knows that they told him in the privacy of the attorney/client relationship.*

Transcript of Motion Hearing, July 14, 1994 ("Motion Tr.") at 24–26 (spelling of Defendants name corrected from original) (emphasis added).

This Court then asked Doherty the following question:

But what I want to know this afternoon is, knowing these things that I've told you . . . about . . . his former representation of these other witnesses, a couple who will be witnesses for the government . . . Do you nevertheless want him for your attorney?

*Id.* at 26–27. Doherty answered "Yes, Sir." *Id.* at 27. This Court then emphasized the seriousness of Doherty's actions stating:

The Court: You understand now, one other thing, if you go ahead now and he represents you, and things don't turn out right, you're convicted of something here, I at least, looking you right in the eye and telling you this, I'm going to be pretty skeptical if I then hear from you well, he didn't do a good enough job for me because he represented other people. Are you very clear on that?

Mr. Doherty: Yes, sir, I am.

*Id.* After the colloquy in open court and in consideration of the documents submitted, this Court denied the motion to disqualify and allowed Clifford to remain as Doherty's counsel.

At trial, as expected, the government called Nelson as a witness against Doherty. During cross-examination, Clifford attempted to elicit testimony about the content of conversations he had with Nelson in the course of his representation. At one point during the cross-examination, Clifford asked Nelson: "You never mentioned to me during that time any of the names that have been involved in this case, did you?" Trial Transcript ("Tr."), Vol. 7 at 153. The Assistant United States Attorney properly objected and a side bar conference followed. During that conference, the following exchange occurred:

THE COURT: . . . [I]t's a personal privilege here. Now, I wouldn't force Mr. Clifford off the case, but you've asked for that—that question asked for privileged material, ostensibly privileged material, and he can claim it, if he wants. Now I don't see his counsel here and I don't know whether he'll claim it, but I'm not going to let you rove around through privileged material. . . .

\*    \*    \*    \*    \*    \*

MR. CLIFFORD: And the reason that I am asking that is because even as it goes to the privilege, Mr. Kelly in one of his debriefings and in his notes, has noted from this fellow here, Nelson, that he discussed with him that he did not tell me the

history of that handgun. So he brought that up.

\* \* \* \* \* \*

THE COURT: ... If this guy Nelson has told you things, I guess that's the line to walk here....

\* \* \* \* \* \*

MR. CLIFFORD: Judge, I think I'll walk the safe path and get away from it.

*Id.* at 153–56.

At another point in the cross-examination, Clifford asked Nelson the following question about a letter Nelson wrote discharging Clifford as his attorney:

Q: Did anybody suggest to you the wording of the letter?

A: No, sir.

Q: And in the letter, sir, you thanked me for what—

Tr. Vol. 8 at 14. At this point in the questioning, the Assistant United States Attorney again objected and a side bar conference ensued. The following colloquy took place during that conference:

THE COURT: I'm very troubled by anything other than the fact of your representation of him on a prior occasion, given his privilege.

MR. CLIFFORD: I will leave it now, Judge. I'm through with it.

THE COURT: All right.

*Id.*

The issue of Clifford's prior representation of Nelson was raised for the final time during closing arguments. In his rebuttal closing, the Assistant United States Attorney stated:

And take very briefly, for example, Michael Nelson which Mr. Clifford, who as you may recall, has represented this individual on at least two prior occasions in the past, would have you completely disregard entirely.

Tr. Vol. 12 at 139. There was no further mention of Clifford's conflict of interest and no objection was made to Clifford's representation of Doherty during the trial.

The jury returned a verdict against Doherty on June 16, 1995. Doherty is now challenging the constitutionality of his conviction on the ground of ineffective assistance of counsel caused by Clifford's alleged conflict of interest.

## II. *DISCUSSION*

Doherty claims that Clifford's alleged conflict of interest deprived him of his right to effective assistance of counsel and that he is thus entitled to *habeas corpus* relief. The government argues that because Doherty executed a knowing, voluntary and intelligent waiver of his right to conflict-free counsel, this Court should deny *habeas corpus* relief. In the alternative, the government states that even if there was not a valid waiver, the potential conflict of interest did not render Doherty's trial constitutionally defective on the grounds of ineffective assistance of counsel.

### A. *Standard of Review*

■ Doherty seeks relief under 28 U.S.C. § 2255, which provides that "[a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States ... may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C.A. § 2255 (West 1994). The court need not hold a hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief...." *Id.* In addition, a sentencing court may rely on its own recollections of previous events when deciding a motion brought under section 2255. *Blackledge v. Allison,* 431 U.S. 63, 74 n. 4, 97 S.Ct. 1621, 1629 n. 4, 52 L.Ed.2d 136 (1977).

### B. *The Waiver of the Right to Conflict–Free Counsel*

■ The Sixth Amendment ensures that all criminal defendants have the right to effective assistance of counsel. U.S. Const. amend. VI; *Cuyler v. Sullivan,* 446 U.S. 335, 344, 100 S.Ct. 1708, 1716, 64 L.Ed.2d 333 (1980). This right encompasses the notion that a defendant is entitled to counsel who is completely loyal to the defendant's cause and, therefore, has no conflict of interest.

*Cuyler,* 446 U.S. at 349–50, 100 S.Ct. at 1718–19. So long as it is consistent with the above notion, the Sixth Amendment also gives defendants the right to counsel of their choice. *Wheat v. United States,* 486 U.S. 153, 159, 108 S.Ct. 1692, 1697, 100 L.Ed.2d 140 (1988). A defendant may therefore waive the right to conflict-free counsel so long as that waiver is knowing, voluntary, and intelligent. *United States v. Fahey,* 769 F.2d 829, 834–35 (1st Cir.1985).

■ In an effort to balance these various rights secured by the Sixth Amendment, courts have developed certain procedures with respect to a criminal defendant who chooses counsel with a potential conflict of interest. *See, e.g., Fahey,* 769 F.2d at 834–35. Generally, the trial judge must conduct some type of inquiry into the potential conflict before accepting a waiver of the defendant's right to conflict-free representation. *See Wheat,* 486 U.S. at 161, 108 S.Ct. at 1698. If the judge finds the defendant is making a knowing, voluntary, and intelligent waiver, the court may accept the waiver and the trial may proceed. *Fahey,* 769 F.2d at 835.

■ For example, where counsel represents more than one defendant in the same case—so called "joint representation"—Rule 44(c) of the Federal Rules of Criminal Procedure provides that:

> the court shall promptly inquire with respect to such joint representation and shall personally advise each defendant of his right to effective assistance of counsel, including separate representation. Unless it appears that there is good cause to believe no conflict of interest is likely to arise, the court shall take such measures as may be appropriate to protect each defendant's right to counsel.

Fed.R.Crim.P. 44(c). In addition, the First Circuit has held that, in the context of joint representation, it is the duty of the district court:

> as early in the litigation as practicable, to comment on some of the risks confronted where defendants are jointly represented

to insure that defendants are aware of such risks, and to inquire diligently whether they have discussed the risks with their attorney, and whether they understand that they may retain [alternate counsel or have counsel] . . . appointed by the court . . .

*United States v. Foster,* 469 F.2d 1, 5 (1st Cir.1972); *see also Fahey,* 769 F.2d at 834–35. Only after such inquiry may the court, in its own discretion, determine whether the defendant is making a knowing, voluntary, and intelligent waiver of his or her right to conflict-free counsel. *Wheat,* 486 U.S. at 164, 108 S.Ct. at 1699–1700.

The requirement of a knowing, voluntary and intelligent waiver of the right to conflict-free counsel extends beyond the joint representation context. *See United States v. Saccoccia,* 58 F.3d 754, 772 (1st Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1322, 134 L.Ed.2d 474 (1996). Thus, in the case of successive representation—where counsel previously represented an individual later called as a witness against his current client—this Court must follow the same stringent procedures for accepting a waiver of the right to conflict-free representation. It is important to emphasize, however, that where a knowing, voluntary, and intelligent waiver is made, an individual may continue to have the counsel of his choice notwithstanding the potential for a conflict of interest. This protects the core values of the Sixth Amendment. Any more restrictive waiver rule would infringe those values and would act as incentive for the government to disqualify the most active and vigorous members of the defense bar solely because they have in the past represented individuals who are now cooperating with the government.

■ In this case, this Court conducted a *Foster* hearing on the matter of Clifford's conflict of interest. During the hearing, this Court informed Doherty not only of the potential conflict from Clifford's current representation of Driscoll, but also of the conflict which potentially could arise from Clifford's prior representation of Nelson.[3] This Court

---

3. Doherty does not challenge his conviction on the ground that Clifford's joint representation of Doherty and Driscoll deprived him of his right to effective assistance of counsel and, therefore, this Court does not address that issue.

told Doherty exactly how this conflict could manifest itself in the cross-examination of Nelson. Doherty told the Court that he understood his rights and that he nevertheless wanted Clifford to represent him. Under the circumstances, this Court found that Doherty knowingly and voluntarily waived his right to conflict-free counsel. Nothing in the record submitted to this Court suggests that the prior determination was erroneous.

Doherty attempts to bypass this result by arguing that because he had "no prior experience with the criminal justice system, [he] was not in a position to understand that his lawyer could end up protecting the witness, at Doherty's expense." John Doherty's Memorandum in Support of Motion to Vacate Judgment Pursuant to 28 U.S.C. § 2255 ("Petitioner's Memorandum") at 23–24. In addition, Doherty states that "no one could predict, before trial, that trial counsel would become mired in actively protecting the witness's attorney-client privilege at the expense of asking certain questions on cross-examination." *Id.* at 23.

Doherty's arguments notwithstanding, this Court not only predicted but also explained the possible problems that might manifest themselves in the course of the trial. In particular, this Court explained that Clifford would be unable to use information he obtained in the course of representing Nelson on cross-examination. It is difficult to understand how Doherty can now argue that his waiver was not knowing when this Court specifically told him that "when [Clifford] gets up to examine these witnesses, he can't use what he knows, he can't use anything he knows that they told him in the privacy of the attorney-client privilege." Motion Tr. at 26. "When a defendant knowingly selects a course of action, fully cognizant of its perils, he cannot later repudiate it simply because his case curdles." *Saccoccia,* 58 F.3d at 772. Therefore, this Court rules that Doherty executed a knowing, voluntary, and intelligent waiver of his right to conflict-free counsel.

C. *The Cross–Examination of Michael Nelson*

■ Even though this Court rules that Doherty executed a knowing, voluntary, and intelligent waiver of Clifford's potential con-

flict of interest, "a waiver doesn't foreclose the possibility that an actual conflict could adversely have affected the adequacy of representation and violated [the defendant's] sixth amendment right to counsel." *See Fahey,* 769 F.2d at 835. Doherty may, therefore, be entitled to *habeas corpus* relief if he can demonstrate that "an *actual conflict* of interest adversely affected his lawyer's performance." *Cuyler,* 446 U.S. at 348, 100 S.Ct. at 1718 (emphasis added). Upon such a showing, Doherty "need not demonstrate prejudice in order to obtain relief." *Id.* at 349–50, 100 S.Ct. at 1719.

Doherty argues that an actual conflict existed in this case because 1) "trial counsel represented *the witness's* interests—protecting the witness's privileged attorney-client communications, by preserving the confidential nature of the communications between them," Petitioner's Memorandum at 19 (emphasis in original), and 2) "Doherty's interests in a full cross-examination of Michael Nelson w[ere] at odds with trial counsel's interest in avoiding malpractice and possible Board of Bar Overseer disciplinary action for revealing his former client's privileged communications," *id.* at 20. These claims are insufficient to establish an actual conflict.

■ To find an actual conflict, a court must determine that 1) defense counsel could have pursued an alternate defense strategy or tactic, and 2) the alternate strategy was not pursued because of defense counsel's conflicting loyalties. *United States v. Soldevila– Lopez,* 17 F.3d 480, 486 (1st Cir.1994). Here, Doherty fails to specify what alternate defense strategy could have been used, but implies that Clifford could have questioned Nelson about certain privileged communications between Clifford and Nelson. As no attorney other than Clifford could have pursued this line of questioning, it is difficult to conceptualize how Doherty was adversely affected by Clifford's failure to examine Nelson as to privileged communications. Doherty has failed to "demonstrat[e] that an actual conflict of interest had adversely affected his lawyer's performance by pointing to specific instances in the record where another attorney could have and would have done some-

thing different." *United States v. Lowry,* 971 F.2d 55, 64 n. 8 (7th Cir.1992).

Doherty places a great deal of emphasis on the case of *United States v. Iorizzo,* 786 F.2d 52, 57–58 (2d Cir.1986), describing it as "a case with facts strikingly similar to this case." Petitioner's Memorandum at 15. In *Iorizzo,* the Second Circuit reversed a conviction because the defendant's trial counsel abandoned a line of cross-examination of a key government witness whom he had previously represented. *See* 786 F.2d at 56–58. In that case, however, defendant's counsel was unable to impeach his former client with prior testimony because he had represented the witness in the proceeding in which the witness gave the testimony. *Id.* at 56. In *Iorizzo,* therefore, any other attorney could have used the prior testimony to impeach the witness, and only the defendant's counsel was prevented from doing so because of his past representation of the witness. Thus, trial counsel had an actual conflict with an obvious adverse effect on the representation. *Id.*

In this case, by contrast, Clifford was not seeking to use a transcript of a public proceeding to impeach Nelson. Rather, the abandoned line of cross-examination involved inquiry into privileged communications, the substance of which is known to no one except Nelson and Clifford. There is no way any other attorney could have pursued this strategy. Therefore, Doherty was not adversely affected by an actual conflict when Clifford curtailed certain lines of cross-examination because of his prior representation of Nelson.

■ In addition, Doherty has failed to "show that his attorney's performance fell below an objective standard of reasonableness and that there is a reasonable probability that but for this ineffective assistance the outcome of the trial would have been different." *United States v. Carbone,* 880 F.2d 1500, 1501 (1st Cir.1989) (citing *Strickland v. Washington,* 466 U.S. 668, 687–94, 104 S.Ct. 2052, 2064–68, 80 L.Ed.2d 674 [1984] ), *cert. denied,* 493 U.S. 1078, 110 S.Ct. 1131, 107 L.Ed.2d 1037 (1990). There is no showing in this case that Clifford did not act reasonably in abandoning his inquiry into privileged material. Moreover, Doherty points to nothing which would lead this Court to conclude that

the outcome would have been different if Doherty had other counsel. As stated previously, Clifford is the only attorney with knowledge of the information sought during cross-examination. This Court, therefore, rules that Doherty was not deprived of effective assistance of counsel with respect to the cross-examination of Nelson.

### D. *Closing Argument*

■ Doherty also argues that "the Government's comments about trial counsel's prior representation of Michael Nelson—made to discredit trial counsel's assertion that Nelson, the key witness, was not believable— demonstrate that trial counsel's prior representation of the witness adversely affected Doherty." Petitioner's Memorandum at 22– 23. Specifically, Doherty argues that the Assistant United States Attorney's comment in his rebuttal closing made Clifford's attack on Nelson's credibility seem "insincere" and "undermine[d] trial counsel's credibility" *Id.* at 23.

While it is conceivable that an adverse effect from an actual conflict of interest may arise in circumstances where the prosecutor impugns the credibility of defense counsel for proceeding with a conflict of interest, *see Dawan v. Lockhart,* 31 F.3d 718, 722 (8th Cir.1994), that is not the case here. The Assistant United States Attorney's comment in his rebuttal closing only reminded the jury of the fact that Clifford previously represented Nelson. It would seem that the purpose, rather than to discredit Clifford, was to bolster the credibility of Nelson. Unlike the *Dawan* case relied on by Doherty, the Assistant United States Attorney was not implying that Clifford acted improperly in his previous representation of Nelson. *See* 31 F.3d at 722 (where prosecutor had witness admit to making false statements while represented by defense counsel and thus "underscored that the same attorney currently representing [the defendant] had also represented the witness who changed his story"). Therefore, this Court rules that the comment in closing about Clifford's prior representation of Nelson did not adversely effect Doherty.

### III. *CONCLUSION*

For the forgoing reasons, this Court hereby *DENIES* Doherty's request for *habeas corpus* relief under 28 U.S.C. § 2255.