**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Luis PAZ-SIERRA, Defendant-Appellant.**

**No. 106, Docket 30203.**

United States Court of Appeals
Second Circuit.

Argued Sept. 23, 1966.

Decided Oct. 14, 1966.

Eugene R. Anderson, New York City, for appellant.

Max Wild, Asst. U. S. Atty. (Robert M. Morgenthau, U. S. Atty., for the So. D. of New York, New York City, Robert G. Morvillo, Asst. U. S. Atty., of counsel), for appellee.

Before WATERMAN, MOORE and ANDERSON, Circuit Judges.

MOORE, Circuit Judge:

The defendant, Luis Paz-Sierra (Luis) and his brother, Jose Ramon Paz-Sierra (Jose), were convicted by the court (a jury having been waived) of a sale of cocaine to a federal narcotics agent, 26 U.S.C.A. §§ 4705(a) and 7237(b) (count one of the indictment). Jose was convicted of a sale of marihuana (count two). The court dismissed count three (conspiracy) as to both defendants. The appeal by Jose was not perfected and on Government motion was dismissed. Luis, by court-appointed counsel, appeals.

On the trial, the brothers were represented by counsel retained by them.

Luis now urges as reversible error (1) that the trial court should have informed him of his right to separate representation; that the court should have made an affirmative determination of waiver by Luis of such right; and that multiple representation violated Luis' constitutional right to counsel, and (2) that the trial court should have granted a motion of Luis' trial counsel that the Government produce, or disclose the whereabouts of, the informant. A resolution of both issues requires a review of the entire trial record.

### The Government's Opening

In a full opening statement, the Government disclosed the existence of an informant, the facts which it expected to prove through a narcotics agent, the narcotics transaction between the agent and Luis in the men's room of a bar, and the payment by the agent to Jose and the delivery by Luis of the narcotics. Defendants' counsel waived an opening statement and did not then make a motion for, or request the production of, any informant.

### The Trial

The narcotics agent testified as to his activities on June 17, 1964, namely, that, accompanied by an informant, he discussed with Jose the possibilities of getting cocaine; that Jose brought his brother Luis to the bar; that the agent and Luis went to the men's room where Luis showed the agent a small package of white powder, saying, "It is good cocaine"; that at the bar Luis delivered the package to him; and that Jose "grabbed" the money which the agent was about to hand to Luis. On cross-examination defendants' counsel asked how long the agent had known the informer, developed the fact that the informer was present in the bar and reserved "the right to explore that aspect [any promise to the informer] if the informer is put on the stand."

After the Government had concluded its case, defendants' counsel for the first time moved that the Government be directed "to produce the so-called informant so that I may be able to call him as a witness for the defendants." The Government objected to disclosing the informer's name "at this stage of the proceedings" and argued that the conditions for disclosure had not then been met. The court ruled "on the basis of the present record I will deny your application at this time and see what happens later on in the case."

Both defendants testified, in substance, at variance with the agent's testimony. No motion or request was then made for the production of—or the Government's knowledge of, if any—the name or whereabouts of the informer. At the conclusion of their testimony, the defense rested. However, at the close of the entire case, colloquy between court and defendants' counsel effectively disposed of the present claim that defendants' motion to produce the informant or disclose his whereabouts should have been granted. First, any participation by the informant in the material part of the sale was not established. To the contrary, the proof was that the federal agent and Luis (Government's proof) or Jose (defendants' proof) were alone in the men's room. In fact, defendants' counsel said, "There is no allegation on the part of the Government, no evidence to support such allegation that this defendant's name was ever mentioned by the informer or by anyone or was known to the agents." Secondly, the name of the informer and his whereabouts were known as well, if not much better, to Luis and his brother than to the Government. Thus, defendants' counsel told the court that the childhood friend (Enrique) "I think is the informer, * * *. This is the man the Government has mentioned as the informer." To clinch the certainty, the court said, "I take it on that as far as the informer is concerned, you feel, and I think quite rightly, that the informer is Enrique, who is this childhood friend of the defendants?" to which defendants' counsel responded, "There is very little question about that." The court: "It is not as though this were some kind of stranger that

suddenly appeared. These defendants knew this fellow, this informer. He was no stranger to them." Defendants' counsel then assured the court that the testimony "stands uncontradicted now that they knew him since childhood."

*The Asserted Right to Separate Representation*

■ The factual background is that the defendants, the brothers Luis and Jose, were represented by counsel retained by them; that their versions of the narcotics transaction were in substance identical and to the effect that Luis did not participate therein—only Jose. The multiple representation question was not raised in the trial court. Other counsel now on appeal argues that there is a growing awareness on the part of Bench and Bar "of the inherent evils in such representation" and that "Both state and federal courts are increasingly inclined to appoint separate counsel in almost all cases." Sawyer v. Brough, 239 F.Supp. 898, 902 (D.Md., 1965). Counsel urges that this court reconsider "its position," namely, "that some conflict of interest must be shown before an appellant can successfully claim that representation by an attorney also engaged by another defendant deprived him of his right to counsel" as stated in United States v. Dardi, 330 F.2d 316, 335 (2 Cir. 1964), cert. denied 379 U.S. 845, 85 S.Ct. 50, 13 L.Ed.2d 50 (1965). See also United States v. Press, 336 F.2d 1003, 1017 (4 Cir. 1964), cert. denied 379 U.S. 965, 85 S.Ct. 658, 13 L.Ed.2d 599 (1965); United States v. Bentvena, 319 F.2d 916 (2 Cir. 1963). Appellate counsel suggests that the defense that "Jose did it, Luis did not," was "wide of the mark" and that separate counsel might have planned a different strategy. In furtherance of this argument, counsel relies heavily on Campbell v. United States, 122 U.S.App.D.C. 143, 352 F.2d 359 (1965) and on the proposition therein advanced that:

> "When two or more defendants are represented by a single counsel, the District Court has a duty to ascertain whether each defendant has an awareness of the potential risks of that course and nevertheless has knowingly chosen it," 352 F.2d at 360,

and that the trial judge should make an "affirmative determination that co-defendants have intelligently chosen to be represented by the same attorney * * *" (360).

Obviously such "affirmative determination" could not be "intelligently" made by the trial judge unless he knew all the facts, only upon which a proper determination could be made. To learn all the controlling facts, the trial judge would have to require each defendant to tell him (Fifth Amendment rights notwithstanding) his version of the alleged crime. It is to be doubted that even the court in the Campbell case would make such a procedure a prerequisite to an "affirmative determination."

The ramifications of the situation in which the court in advance of trial arrogates to itself the function of determining whether the "co-defendants have intelligently chosen to be represented by the same attorney" are so great as to cause this Court to doubt the wisdom of adopting the proposition that an affirmative determination be made by the trial court that the defendant has "intelligently chosen to be represented by the same attorney." No facts have thus far been presented that the Bar of this country is so unmindful of the canons of ethics and its obligation to avoid positions of conflict as to call for a pre-trial cross-examination of defendants and their counsel on the theory, or even presumptuous presumption, that counsel will not be faithful to the best interests of their clients and when aware of any conflict of interest between clients jointly represented whether before or during trial will not disclose it to the court and seek appropriate relief. Furthermore, should it appear that a defendant was in fact prejudiced by the sharing of counsel, he would be even more prejudiced in raising this point on appeal by the trial court's a priori finding that there was

no prejudice likely to occur in proceeding with shared counsel. An appellate court could almost take judicial notice of the fact that in a joint representation situation, if one defendant were convicted and the other acquitted, appellate counsel would argue prejudice as to the convicted defendant. Hindsight being what it is, a wiser approach might well be to leave to the members of the Bar the avoidance of cases of apparent prejudice by their refusal to represent clients with conflicting interests.

Specifically, and as applied to this case, Jose and Luis retained counsel, presumably of their choice. The two brothers and their counsel apparently decided that they would pit their coordinated stories against that of the agent. As the trial court said, "The problem here resolves itself as to the credibility that I give to the defendant Luis." He concluded "that the defendants' story here does not seem credible to me." A reading of the entire record discloses no occasion on which there was any conflict of interest or even any situation which might have made separate representation desirable. Thus there is no reason to depart from our "position" with respect to the requirement that conflict of interest must be shown as a foundation for any claim that joint representation was a deprivation of the right t counsel.

*The Informer*

The informer although present in the bar did not actively participate in the narcotics transaction. Furthermore, the trial judge did not foreclose the defense from renewing its application. Defense counsel did not renew his motion nor did he disclose to the court by offer of proof or otherwise any role which the informer might have played in aid of the defense. Because the importance of the presence of the informer can be gauged only by the facts of each case, no useful purpose will be served by analyzing and distinguishing the facts in the many cases cited by appellant.

Affirmed.