**UNITED STATES of America ex rel. John HUSSEY, Petitioner,**

**v.**

**J. Edwin LaVALLEE, Warden, Clinton Prison, Dannemora, New York, Respondent.**

**No. 69–C–127.**

United States District Court
E. D. New York.
July 30, 1969.

John Hussey pro se.

Louis J. Lefkowitz, Atty. Gen., New York City, for defendant.

BARTELS, District Judge.

### MEMORANDUM—DECISION and ORDER

*Pro se* application for a writ of *habeas corpus* pursuant to 28 U.S.C.A. § 2254. Petitioner was convicted on January 25, 1950 of first degree murder, after a jury trial, and is now incarcerated for a term of life imprisonment upon the jury's recommendation. Two basic issues are advanced: (1) his counsel were forced to proceed with the trial, though unprepared, and (2) one of his

assigned counsel was also assigned to represent a co-defendant, resulting in a conflict of interest, preventing petitioner from being effectively represented by counsel. Petitioner filed an appeal from the conviction, which he discontinued on October 2, 1950 and followed with a motion in the State court for a writ of error *coram nobis*. After a hearing, the motion was denied and the decision affirmed by the Appellate Division, Second Department, on June 24, 1968. Leave to appeal to the Court of Appeals was denied on September 20, 1968. Thus, the petitioner has exhausted his State remedies. *Cf.*, United States ex rel. Figueroa v. McMann, 411 F.2d 915 (2d Cir.1969); United States ex rel. Smith v. Follette, 405 F.2d 1199 (2d Cir.1969).

An examination of the record discloses that petitioner received a full and fair State court evidentiary hearing, resulting in reliable findings (Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed. 2d 770 (1963); Olshen v. McMann, 378 F.2d 993 (2d Cir.1967), cert. denied, 389 U.S. 874, 88 S.Ct. 165, 19 L.Ed.2d 157 (1967), reh. denied, 389 U.S. 964, 88 S. Ct. 341, 19 L.Ed.2d 381 (1967); 28 U. S.C.A. § 2254(d)), which this Court adopts as follows:

Hussey and two co-defendants, Benny Calcione and Eugene Bogert, were indicted for murder committed in the process of fleeing from a robbery; on August 16, 1949, Hussey made a voluntary confession to the District Attorney admitting that he was the only participant who handled or fired the murder weapon; on September 1, 1949, Alfred Ritter, Jerome Belson and Samuel Abrams were assigned to represent Hussey and the case was set down for trial on January 16, 1950; on January 16, 1950, the trial judge appointed Samuel Bader as Hussey's fourth counsel; Bader was also co-counsel for co-defendant Calcione, but had prior to January 16, 1950, been asked to assist Hussey's counsel and had several conferences with

them prior to the appointment; on January 16, 1950, Hussey's case was severed from his co-defendants; Bader and Belson testified at the hearing that all counsel had agreed that the best defense was one of being frank with the jury, hoping for a recommendation of leniency; the first three assigned counsel had several conferences with Hussey before the trial date and Bader had one conference with Hussey, just before he took the stand in his own defense; Hussey sat and conferred with all counsel during the course of the trial; on January 16, 1950, the day the jury was impaneled, Belson asked for a continuance for a final opportunity to confer with Hussey, which he said was necessary before a jury could be picked; the week before the petitioner had been in the Kings County Hospital undergoing tests, during which time counsel first planned to have this final pretrial conference; the trial judge refused the continuance, stating that counsel had had four months to discuss the case.

The jury was then impaneled, both Bader and Belson participating in questioning of prospective jurors; an adjournment was called after the impaneling and the trial did not resume until January 23, 1950; neither Calcione nor Bogert testified at the trial nor did either's account of the crime differ from Hussey's; subsequent to Hussey's conviction, the District Attorney accepted from Hussey's co-defendants a plea of guilty to murder in the second degree and each was sentenced to twenty years to life; previously the District Attorney had refused Hussey's offer of a plea to the lesser offense; Bader testified that it was the policy of the District Attorney, at that time, not to accept a lesser plea from the "trigger man".

An accused has the right to timely and effective assistance of counsel (Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932)), who must not be denied an opportunity to confer with his client or to prepare a de-

fense. Avery v. Alabama, 308 U.S. 444, 446, 60 S.Ct. 321, 84 L.Ed. 377 (1940). Although mere perfunctory appearance of counsel is not enough (Glasser v. United States, 315 U.S. 60, 76, 62 S.Ct. 457, 86 L.Ed. 680 (1942)), the burden is on the petitioner to show that he was not adequately represented (United States ex rel. Marshall v. Wilkins, 338 F.2d 404 (2d Cir. 1964)) and he must do more than allege incompetency; he must point to specific prejudice upon the trial resulting from the alleged incompetency. Lollar v. United States, 126 U.S.App.D. C. 200, 376 F.2d 243 (1967); United States ex rel. Hardy v. McMann, 292 F. Supp. 191 (S.D.N.Y.1968). Proof of inadequacy of counsel has been held to a stringent standard, United States ex rel. Boucher v. Reincke, 341 F.2d 977 (2d Cir.1965); it "must be of such a kind as to shock the conscience of the Court and make the proceedings a farce and mockery of justice". United States v. Wight, 176 F.2d 376, 379 (2d Cir.1949), cert. denied, 338 U.S. 950, 70 S.Ct. 478, 94 L. Ed. 586 (1950); United States ex rel. Maselli v. Reincke, 383 F.2d 129, 132 (2d Cir.1967); United States ex rel. Jablonsky v. Follette, 291 F.Supp. 828, 830 (S.D.N.Y.1968). When a petitioner alleges inadequate assistance of counsel resulting from a conflict of interest because of joint representation, he must show some conflict of interest between himself and the other defendants represented by his attorney before he can claim successfully that the joint representation deprived him of his right to counsel. See, United States v. Bentvena, 319 F.2d 916, 937 (2d Cir.1963), cert. denied, Ormento v. United States, 375 U.S 940, 84 S.Ct. 345, 11 L.Ed.2d 271 (1963), and the numerous cases therein cited.

■ Being specific, the State court hearing revealed that Bader was a specialist in criminal appeals and counsel work. Prior to the assignment he had conferred with petitioner's other counsel on several occasions and all counsel agreed on the trial tactics. Bader and the other counsel were aware of petitioner's confession and at no time had petitioner professed innocence, nor does he now. Since Bader represented a co-defendant, he was presumably familiar with the case and his last minute appointment, especially in light of the fact that he had previously consulted with petitioner's other counsel, is of no significance unless petitioner's defense raised issues not presented by the defense of his co-defendants. United States ex rel. Marshall v. Wilkins, *supra.*

This is not an instance where petitioner's counsel simultaneously represented at trial co-defendants with conflicting interests, Glasser v. United States, *supra*; Lollar v. United States, *supra,* nor is this a case similar to United States v. Hayman, 342 U.S. 205, 72 S.Ct. 263, 96 L.Ed. 232 (1952), where a conflict of interest arose from counsel's simultaneous representation of an accused and a principal witness for the prosecution who was awaiting sentence upon a related conviction. Calcione, Bader's other client, admitted participation in the crime, but his story did not conflict with petitioner's and his trial was severed and he was not called to testify at petitioner's trial. However, he was brought to the courtroom, at one point, to be identified by the complainant, during which time he remained silent. No instance appears in which there was a conflict of interest or which might have rendered the dual representation undesirable. United States v. Paz-Sierra, 367 F.2d 930, 932–933 (2d Cir.1966), cert. denied, 386 U.S. 935, 87 S.Ct. 962, 17 L.Ed.2d 807 (1967). The fact that petitioner's co-defendants were allowed to plead to a lesser offense does not suggest a conflict in view of the District Attorney's "trigger man" policy and the fact that petitioner did not deny his role in the crime.

■ Petitioner's other contention of denial of effective assistance of counsel because the trial judge refused to grant a continuance, is equally without merit. "Since the Constitution nowhere speci-

fies any period which must intervene between the required appointment of counsel and trial, the fact, standing alone, that a continuance has been denied, does not constitute a denial of the constitutional right to assistance of counsel." Avery v. Alabama, supra, 308 U.S., at p. 446, 60 S.Ct., at p. 322. The matter of continuance is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates due process. Ungar v. Sarafite, 376 U.S. 575, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964), reh. denied, 377 U. S. 925, 84 S.Ct. 1218, 12 L.Ed.2d 217 (1964). Only an arbitrary refusal is violative of due process and that question depends upon the circumstances in each case, particularly the reasons presented to the trial judge at the time the request is denied. Nilva v. United States, 352 U.S. 385, 77 S.Ct. 431, 1 L.Ed.2d 415 (1957), reh. denied, 353 U.S. 931, 77 S. Ct. 716, 1 L.Ed.2d 724 (1957); United States ex rel. Hyde v. McMann, 263 F.2d 940 (2d Cir.1959), cert. denied, 360 U.S. 937, 79 S.Ct. 1462, 3 L.Ed.2d 1549 (1959).

■ Here petitioner's counsel had at least four months within which to consult with him and were fully aware of the facts and circumstances. They had decided on their trial tactics and apparently were successful since the jury recommended leniency despite the petitioner's confession upon the stand. No testimony was taken until January 23rd, one week after the refusal, during which interval there was ample opportunity to confer with petitioner. Although the selection of a jury is a crucial part of any criminal trial, it is impossible, in the context of this case, to conclude that the trial judge's insistence that the jury be impaneled before an adjournment, was arbitrary or in any way prejudiced the petitioner. The trial transcript clearly indicates that petitioner was competently and effectively represented during all phases of the trial.

Accordingly, the application for a writ of *habeas corpus* is hereby denied. So ordered.